IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

    Plaintiff,                                                      No.  Cr. S-09-339 KJM

    vs.

CHRISTOPHER MCCLUER,

    Defendant.                                                     <u>ORDER</u>

_____/

        This matter was on calendar on February 4, 2010, for argument on defendant's motion to suppress.  Defendant, who was present in court, was represented by Erin J. Radekin, Attorney at Law; plaintiff was represented by Matthew P. De Moura, Certified Law Student.

I. <u>Background; Preliminary Matters</u>

        Defendant is charged in an information with one count of possession of marijuana on May 30, 2009, in violation of 21 U.S.C. § 844(a), in the El Dorado National Forest.

        The interaction giving rise to the charge was recorded by a camera mounted in the vehicle of the ticketing officer, Officer Ken Marcus.  A DVD of that interaction has been lodged as defendant's Exhibit C.  The parties submitted this motion without an evidentiary hearing, relying on the account as shown on the DVD.

/////

In the factual recitation in support of his motion to suppress, defendant also relies on the Statement of Probable Cause submitted to the Central Violations Bureau (CVB) in support of the ticket the officer prepared on May 30, 2009, and attaches that statement as Exhibit A to his motion. At hearing, however, counsel for defendant objected to any reliance on the Statement Of Probable Cause because she had never received a signed copy of the statement. Counsel for the government contended that the signed original was in the custody of CVB. Having submitted a copy of the probable cause statement in connection with his motion, defendant's objection is misplaced. The court will rely on it to the extent it does not conflict with the event as shown on the DVD.

In his reply to the government's opposition to the motion, defendant has submitted copies of probable cause statements, also unsigned, prepared by Officer Marcus in other marijuana possession cases, along with a portion of a motion to suppress filed in another case. Reply, Docket No. 19-2 at 1-6.[1] Counsel notes that the government dismissed several of these cases and argues that the statements show Officer Marcus's *modus operandi* of "accosting and coercing citizens into turning over evidence" and show his pattern of using "an investigatory stop as a pretext for developing additional evidence." Reply (Docket No. 19) at 5. Counsel cites nothing suggesting this evidence would be admissible or that it could properly be considered without an evaluation of the legality of Officer Marcus's actions in those other cases, an inquiry the court declines to undertake. Fed. R. Evid. 404(b), 403. Counsel also argues the other actions render Officer Marcus's credibility suspect. Id. The court declines to consider Officer Marcus's actions in other situations to judge his credibility in this situation, or otherwise as evidence. Fed. R. Evid. 609(b). Defendant has not borne his burden of showing this evidence is admissible

---

[1] In the reply, counsel refers to these documents as Exhibit D, but there is no separate page so identifying them. Accordingly, the court refers to the page numbers assigned by its ECF system.

1  substantively or for impeachment.  See United States v. Youts, 229 F.3d 1312 (10th Cir. 2000)
2  (proponent of 404(b) evidence bears burden of showing it is relevant to issue other than character).
3  II.  Facts
4  　　　　　On May 30, 2009, Officer Ken Marcus was on duty in the El Dorado National
5  Forest.  At about 16:15:30[2], he found defendant and his wife, Mary Louise Manning, sitting on
6  camp chairs by their car, which was parked off a road Officer Marcus characterized as not open
7  for civilian vehicle traffic.  At about 16:16:10, Officer Marcus asked for the car owner's driver's
8  license, registration and proof of insurance and directed defendant to take his hands out of his
9  pockets.  Officer Marcus informed defendant he was going to write an incident report, but not
10 issue a ticket.  Defendant walked to the car, a Subaru.  Manning asked Officer Marcus how to
11 identify the designated roads and at about 16:16:40, Officer Marcus directed her not to stand so
12 close to him.
13 　　　　　Officer Marcus then walked toward the car and camp chairs.  At 16:17:04, he can
14 be heard commenting on some incense burning by the chairs.  Defendant handed Officer Marcus
15 some documents, observing that he did not know which was the valid registration.  Officer
16 Marcus identified the current registration and added that he needed defendant's license and proof
17 of insurance; defendant handed something else to Officer Marcus.  By 16:17:25, Officer Marcus
18 turned away from the Subaru.  At 16:17:30 and 16:17:34, as Officer Marcus returned to his car,
19 Manning bent down briefly by the chairs and did something.  Officer Marcus's back was turned
20 at first, but he did look over his shoulder at one point as he walked back to his car.  The DVD
21 does not show what Manning was doing.
22 　　　　　Apparently sitting in his car, between 16:17:43 and 16:18:10, Officer Marcus
23 asked dispatch to check the validity of defendant's license and registration.  At about 16:18,
24 Officer Marcus says something about his laptop computer and, based on the sounds audible on

---

[2] The court refers to the time as shown on the DVD of the encounter.

3

the tape, appears to begin doing something with the computer. By 16:19:26, he had received the report that both the license and registration were valid and current. At 16:19:33, Officer Marcus said something that sounds like he was "just going to watch" and see if "they do anything funny."

At 16:22:31, Officer Marcus emerged from his vehicle and returned to the couple, both of whom had been sitting in their camp chairs since he returned to his patrol car. At about 16:22:42, Officer Marcus told them he "need[ed] them to be honest" and then asked if there was any marijuana present, based on what Officer Marcus described as defendant's red, watery eyes and the incense burning. Both Manning and defendant said no, and Manning at one point said they had had a beer. Between 16:22:50 and 16:22:57, Officer Marcus asked them several times about their marijuana usage, but they continued to deny having smoked marijuana.

At 16:22:58, Officer Marcus said he had probable cause to believe they had been smoking marijuana, based on the incense and the red, watery eyes. At 16:23:08, Manning said that they had smoked earlier, when they had been hiking. Between 16:23:16 and 16:23:19, Officer Marcus asked for the pipe, papers or paraphernalia; at this point, defendant looked at his backpack. At 16:23:29, Manning handed Officer Marcus an Altoids tin containing some marijuana cigarettes. Beginning at 16:23:40, Officer Marcus told defendant that it was "time to be honest" because "I'm going to search you," and said again that he had probable cause to search, but it would be "easier" if defendant gave Officer Marcus any drugs he had because he would prefer not to search defendant or "rummage through" his car. Defendant then retrieved marijuana from his back pack and admitted to having smoked marijuana.

Officer Marcus did not return defendant's license and registration to him until the end of the encounter, at about 16:37:32.

In his probable cause statement, Officer Marcus claimed that defendant was "extremely lethargic" and Manning was "extremely nervous." The court does not credit these characterizations: neither are supported by the DVD. Officer Marcus also maintained that defendant appeared confused about which of the vehicle registrations in his glove box was valid,

4

despite clear labeling on the forms themselves. Once again, this is not supported by the DVD: defendant had some papers in his hand and was narrating what he was doing as he searched for the current registration. Officer Marcus took the papers and selected the valid document. In addition, Officer Marcus said that "defendant had to be asked a second time for his driver's license and proof of insurance." What the DVD shows is that defendant handed Officer Marcus the registration papers first and just after Officer Marcus had confirmed which registration was valid and before defendant could hand over any other material, Officer Marcus said again he wanted the license and registration. The court does not find this suggestive of confusion or reluctance or impairment. Finally, Officer Marcus asserts that Manning was hiding something as he returned to his vehicle with defendant's license and registration. It does appear that Manning was doing something, but Officer Marcus's back was turned as she began to act. He did glance over his shoulder, but it is not clear what he could see during that brief glance. It does appear that he reached his vehicle before Manning finished, but Officer Marcus does not further describe what actions he believed constituted the act of hiding something. The DVD itself does not show anything that can be characterized clearly as hiding something. Accordingly, the court places little weight on these observations.

III.  Analysis

        Defendant argues he was improperly detained without reasonable suspicion and that his surrender of the marijuana from his back pack was the fruit of the illegal detention. The government contends that the original detention was justified by Officer Marcus's belief that defendant had violated regulations penalizing the use of undesignated roads in national forests and his belief that defendant possessed marijuana. The government argues there was no search because defendant gave Officer Marcus the drugs, but if there was a search, defendant consented. Defendant counters that the government has presented nothing demonstrating defendant's car had indeed been driven on an undesignated road, but that even if the initial detention was

1  permissible, the detention was improperly extended once Officer Marcus confirmed the validity
2  of defendant's license and registration.

3        A person is seized for Fourth Amendment purposes when an officer "by means of
4  physical force or show of authority" restrains a person's liberty or when a reasonable person
5  would not feel free to decline the officer's requests or otherwise terminate the encounter. Terry
6  v. Ohio, 392 U.S. 1, 19 n.16 (1968); United States v. Drayton, 536 U.S. 194, 202 (2002). A
7  person is seized when the circumstances surrounding the encounter communicate to a reasonable
8  person that he was "not at liberty to ignore police presence and go about his business." Florida v.
9  Bostick, 501 U.S. 429, 437 (1991) (citation omitted). A seizure may be based on a determination
10 that a person has violated traffic laws. Whren v. United States, 517 U.S. 806, 818-19 (1996). It
11 is the government's burden to prove that a warrantless seizure is reasonable under the Fourth
12 Amendment by proffering specific and articulable facts. United States v. Willis, 431 F.3d 709,
13 715 n.5 (9th Cir. 2005); United States v. Hawkins, 249 F.3d 867, 872 (9th Cir. 2001).

14       Defendant argues that the government has presented nothing showing he had
15 traveled on an undesignated route and so the seizure is not based on reasonable suspicion. The
16 DVD shows defendant parked off an unpaved road, which was not marked by any sort of sign
17 showing it was open to civilian traffic. In addition, at about 16:15, as Officer Marcus pulled off
18 the paved road, he commented that the route was not a designated road. This satisfies the
19 government's burden of production that the detention was based on a traffic violation.
20 Accordingly, Officer Marcus's expressed intention to write an incident report and his retention of
21 defendant's license and registration constituted a seizure based on reasonable suspicion that
22 defendant had committed a violation of 36 C.F.R. § 261.13, and was a valid investigative
23 seizure. See United States v. Chan-Jimenez, 125 F. 3d 1324, 1326 (9th Cir. 1997) (defendant
24 seized when officer "failed to return his driver's license and registration, and proceeded with an
25 investigation"; officer also kept hand on revolver during encounter); United States v. Guerrero,
26 472 F.3d 784, 789 (10th Cir. 2007) (same as to return of documents).

1    The court must answer two inquiries in evaluating a seizure: "whether the
2 officer's action was justified at its inception, and whether it was reasonably related in scope to
3 the circumstances which justified the interference in the first place." Terry, 392 U.S. at 19-20.
4 This means that "an investigative detention must be temporary and last no longer than is
5 necessary to effectuate the purpose of the stop." Florida v. Royer, 460 U.S. 491, 500 (1983)
6 (plurality opinion). A detention may continue so long as the extension relates to the initial reason
7 for the stop unless something happens during the stop that gives rise to reasonable suspicion of
8 other criminal activity. United States v. Davis, 430 F.3d 345, 353 (6th Cir. 2005).

9    Defendant argues that once Officer Marcus learned that defendant's documents
10 were in order, the extension of the seizure rendered everything following a violation of the
11 Fourth Amendment. The government counters that any extension of the original seizure was
12 justified by Officer Marcus's reasonable suspicion that defendant possessed marijuana and that it
13 was proper for him to investigate this suspicion.

14    Reasonable suspicion is the belief that the person detained is or is about to be
15 engaged in criminal activity. United States v. Arvizu, 534 U.S. 266, 273 (2002); United States v.
16 Sokolow, 490 U.S. 1, 7 (1989). This suspicion must have a "particularized and objective basis,"
17 but may be based on an officer's experience and specialized training and the evaluation of
18 inferences based on that training. Arvizu, 534 U.S. at 273, 276.

19    The only information Officer Marcus had as he checked the status of defendant's
20 license was that defendant had glazed, watery, red eyes and that incense was burning. There is
21 nothing in the record showing he had any specialized training or specific experience that these
22 factors in combination were indicative of drug use or possession.[3] As noted above, based on its

---

[3] After submitting on the DVD at the beginning of the hearing, the government's counsel later in the hearing offered to have Officer Marcus testify about his training and experience, conceding there was no evidence in the record on the point. Having previously entertained argument on whether an evidentiary hearing was required, and decided the question in the negative, the court declined to reconsider the question of holding a hearing and Officer Marcus did not take the stand.

7

own review of the DVD, the court does not credit Officer Marcus's claim that defendant was lethargic, that Manning was nervous or that Manning hid something as Officer Marcus returned to his car. Officer Marcus's hunch that defendant and his wife had used marijuana does not provide reasonable suspicion for extending the detention.

The government also argues there is no bright line test for determining when a detention has become so prolonged as to violate the Fourth Amendment. It relies on United States v. Sharpe, 470 U.S. 675 (1985) and United States v. Rojas-Millan, 234 F.3d 464 (9th Cir. 2000). In the former case, the Supreme Court declined to define the precise temporal contours of a permissible detention, but found twenty minutes to be reasonable to allow police to flesh out their suspicion that the defendant was trafficking in drugs, when the police pursued their investigation in a "diligent and reasonable manner." Sharpe, 470 U.S. at 683-87. In the latter case, the Ninth Circuit found a detention for a "short period" between the time that a record check was concluded and the time when defendant consented to the search of the car was justified by reasonable suspicion that the defendant was transporting. Rojas-Millan, 234 F.3d at 470. In both cases, the officers had reasonable suspicion of drug activity before the extension of the initial detention.

In contrast, in United States v. Jenson, 462 F.3d 399 (5th Cir. 2006), the Fifth Circuit observed that detention "may last no longer than required to effect the purpose of the stop. If all computer checks come back clean, then as a general matter reasonable suspicion disappears, and there is no legitimate reason for extending the stop." Id. at 404. Jenson recognized the exception, "that if additional reasonable suspicion arises in the course of the stop and before the initial purpose of the stop has been fulfilled, then the detention may continue until the new reasonable suspicion has been dispelled or confirmed." Id. In Jenson, the court found the officer's purpose in stopping defendant's van to write a warning was satisfied two minutes after the stop was made, when the computer check of defendant's license came back clear. Therefore, defendant's statements, made four minutes after the stop in response to the officer's

further questioning, which contradicted those of defendant's passenger, could not be used to support reasonable suspicion of other criminal activity. Id. at 404-05.  In this case, the purpose of the detention was satisfied when the computer check of defendant's documents was completed at 16:19:26, as shown on the DVD.  This was approximately three minutes before Officer Marcus got out of his car and returned to where defendant and his wife were sitting and not quite four minutes before Manning said they had smoked earlier.

The government also argues that Manning's concession that the couple had smoked marijuana earlier in the day and her surrender of an Altoids tin containing paraphernalia and two marijuana cigarettes support a finding of reasonable suspicion that defendant possessed additional marijuana.  Defendant does not address Manning's statement directly in his papers.  Even assuming her statement was coerced in violation of Manning's Fifth Amendment rights, defendant lacks standing to challenge the violation of his wife's rights, as defense counsel conceded at hearing.  Douglas v. Woodford, 316 F.3d 1079, 1092 (9th Cir. 2003) (defendant may challenge witness's coerced confession only if used at trial).

"[S]tatements given during a period of illegal detention are inadmissible even if voluntarily given if they are the product of the illegal detention. . . ." Florida v. Royer, 460 U.S. at 501.  However, because Fourth Amendment rights are personal, a defendant may generally not rely on the violation of another's rights as a basis for suppression.  Rakas v. Illinois, 439 U.S. 128, 139 (1978).  In this case, it is not clear that Manning's Fourth Amendment rights were violated; Officer Marcus did not ask for and retain Manning's driver's license and questioning by itself does not equal a Fourth Amendment seizure.  Florida v. Bostick, 501 U.S. at 434.

Even so, if defendant can establish a nexus between the violation of his own rights and Manning's statement, he may be entitled to have the statement excluded as fruit of the poisonous tree.  See United States v. Jarvi, 537 F.3d 1256, 1259 (10th Cir. 2008); see also United States v. Mosley, 454 F.3d 249, 253 & n.6 (3d Cir. 2006) (passenger in car who was illegally seized when car was stopped may challenge the stop and the evidentiary fruits of that stop,

including the search of the car); United States v. Cellitti, 387 F.3d 618, 621-22 (7th Cir. 2004) (defendant may challenge girlfriend's consent to search when he also possessed expectation of privacy in place searched). In this case, Officer Marcus's questions directed to both Manning and defendant extended defendant's detention. This fact establishes a nexus between Manning's statements and the violation of defendant's Fourth Amendment rights. These statements and Manning's surrender of the Altoids tin of marijuana are a product of defendant's illegal detention and may not be relied upon to establish reasonable suspicion. See United States v. Mendez, 476 F.3d 1077, 1080 (9th Cir. 2007) (questioning may be a seizure if it prolongs a detention).

The government further argues that whatever the propriety of defendant's detention, there was no search because he gave the marijuana to Officer Marcus and that if this is deemed a search, then he voluntarily consented to it.

In Chan-Jimenez, 125 F. 3d at 1325, three officers asked the defendant to consent to a search and in response, defendant lifted a tarp covering the back of his truck to reveal drugs. The Ninth Circuit treated this as a search and analyzed whether this action demonstrated defendant's consent to search. Id. at 1327. The circumstances surrounding defendant's actions here are similarly a search for Fourth Amendment purposes.

Defendant's consent is valid only if it was voluntary and if it was purged of the taint of his illegal detention. United States v. Washington, 490 F.3d 765, 774 (9th Cir. 2007). A determination whether consent was voluntary is based on the totality of the circumstances, but courts generally consider several factors: (1) was the defendant in custody, (2) did the officers have their guns drawn, (3) were Miranda warnings given, (4) did officers tell defendant he could refuse to consent, and (5) did the officers claim they could obtain a warrant. United States v. Kim, 25 F.3d 1426, 1432 (9th Cir. 1994). A defendant's obedience to a show of authority is insufficient by itself to show consent. Chan-Jimenez, 125 F.3d at 1328.

In this case, although defendant was detained, he was not in custody and so Miranda warnings were not required. Officer Marcus did not display a weapon. However, he

told defendant more than once that he had probable cause to believe drugs were present and that he was going to search defendant. Defendant's response to this show of authority does not constitute a voluntary consent to the search of his backpack. <u>Bumper v. North Carolina</u>, 391 U.S. 543, 548-49 (1968).

Moreover, the government has not shown that the consent was purged of the taint of the illegal detention. In analyzing this question, this court must consider several factors: (1) the temporal proximity of the consent and the illegal detention; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the official misconduct. <u>Washington</u>, 490 F.3d at 776-77. In this case, defendant's consent was part and parcel of the illegal detention, with no intervening circumstances to break the causation. The government has not borne its burden of demonstrating the validity of defendant's consent.

Finally, the government has not shown that defendant's statements, which followed his illegal detention and his tainted consent to search, have been purged of the taint of the preceding illegality. <u>Brown v. Illinois</u>, 422 U.S. 590, 601-02 (1975). This is because defendant discussed his marijuana use and admitted that the material he removed from the backpack was his in close temporal proximity to the detention and search.

IT IS THEREFORE ORDERED that defendant's motion to suppress (docket no. 10) be granted.

DATED: February 23, 2010.

_____
U.S. MAGISTRATE JUDGE

2/mccl0339.mts