IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

      Plaintiff,               No.  Cr. S-09-339 KJM

  vs.

CHRISTOPHER MCCLUER,

      Defendant.          <u>ORDER</u>

_____/

      This matter was on calendar on April 8, 2010 for argument on the government's motion for reconsideration of this court's order of February 24, 2010, which granted defendant's motion to suppress evidence.  Erin J. Radekin, Attorney at Law, appeared for defendant, who was present.  Matthew Stegman, Assistant United States Attorney, and Matthew P. De Moura, Certified Law Student, appeared for the government.

I. <u>Background</u>

      Defendant filed his motion to suppress evidence on December 28, 2009, arguing that defendant was detained unlawfully and that his act of turning over marijuana to Officer Marcus was the fruit of the unlawful detention.  He based his argument on Officer Marcus's probable cause statement and on a DVD of the encounter, which he lodged as an exhibit.  Mot. to Suppress (Docket No. 10).

1    The government opposed the motion, arguing at length that no evidentiary hearing
2 was warranted because there were no disputed issues of fact.  Opp'n (Docket No. 14) at 4-6.  It
3 "stipulate[d] to the facts set forth in Defendant's Exhibit A [the probable cause statement] and
4 the video . . . ."  Id. at 6.  In reply, defendant agreed that the facts necessary to the resolution of
5 the motion were available from the video of the encounter, but disputed some of the
6 government's factual assertions and legal conclusions.  Reply (Docket No. 16) at 3-4.

7    On February 4, at hearing on the motion to suppress, the court asked the parties if
8 they were ready to proceed to evidentiary hearing.  RT 1.  The government said it was "prepared
9 to submit on the DVD and the probable cause statement."  RT 2.  Defense counsel was also
10 "prepared to submit," because "the materials submitted are sufficient, especially since there is a
11 DVD showing the entire encounter."  Id.

12    During the subsequent argument on the motion, the government urged that the
13 materials on other cases submitted by the defense showed "Officer Marcus's training an [sic]
14 experience, . . .substantial experience with controlled substance matters. so he's able to identify
15 the signs of being under the influence of a controlled substance . . . ."  RT 10.  The court asked
16 "what in the record" supported that claim and then whether the court could "infer the training and
17 experience from what's contained in the probable cause statement."  Id.  The government
18 responded that it was the probable cause statement in this case and the additional probable cause
19 statements provided by the defense in an attempt to prove Officer Marcus's alleged modus
20 operandi in drug investigations.  Id.

21    When questioned about Officer Marcus's description of defendant's wife, Ms.
22 Manning, as hiding something on the ground, counsel for the government said that "defendant's
23 wife sort of look[s] around on the ground where the incense is, it's burning almost to be
24 searching, not necessarily hiding, that was a misstatement on the government's part."  RT 23-24.
25 He noted that this occurred at 16:17 on the video.  RT 24.
26 /////

Near the conclusion of the argument, counsel for the government argued that "Officer Marcus is a drug recognition expert." RT 24. Defense counsel objected that there was nothing in the record supporting the claim and the government withdrew that statement. Id. A minute or two later, counsel for the government stated that "during the time in the vehicle the three minutes and before, Officer Marcus was first waiting to hear back from dispatch to verify the license and registration, and also in the prolonged period, it requires time to fill out the incident report –" RT 27. Defense counsel objected that this claim was not supported by the record. Id. It was only at that point, approximately forty minutes into hearing,[1] that the government said "if an evidentiary hearing is needed to add this to the record, then the government so requests one." Id. The court noted that counsel "submitted earlier" and that it intended to proceed, at which point the government indicated its acceptance of that determination. RT 28.

Also late in the hearing, despite having pointed to probable cause statements in the record of other cases, the government objected to the court's considering the motions to suppress in those cases "because those aren't at issue here." RT 28. The court indicated it would take under submission the question of whether to take judicial notice of the record in the previous cases. Id. It does not take such notice. See Lee v. City of Los Angeles, 250 F.3d 668, 680 (9th Cir. 2001) (court cannot take judicial notice of disputed facts in public records); United States v. Dryden, 567 F.Supp.2d 643, 650 (D.Del. 2008) (not proper to consider finding of fact in unrelated case to assess officer's credibility.

In her closing remarks, defense counsel again noted that nothing in the record showed that Officer Marcus had the necessary training and experience to determine whether anyone was under the influence of marijuana. RT 30.

/////

---

[1]   The electronic recording of the hearing records the hearing beginning at about 10:10 a.m., and the government's request made at about 10:47 a.m.

1    In the original order granting the motion to suppress, the court relied on its own

2  review of the DVD in declining to accept Officer Marcus's characterizations of the behavior of

3  defendant and his wife as nervous, lethargic or confused.  Order (Docket No. 21) at 4-5.  The

4  court also questioned whether defendant's wife was engaged in what qualified as "hiding"

5  anything during the brief time Officer Marcus had to observe her as he was walking back to his

6  vehicle.  Id. at 5.  In addition, the court observed that the record was silent as to Officer Marcus's

7  training or expertise in recognizing the signs of drug use or possession.  Id. at 7 & n.3.

8    The government filed a motion for reconsideration of the ruling and, in support,

9  offered the declaration of Officer Marcus.  Mot. for Reconsideration & Decl. of Officer Ken

10  Marcus (Marcus Decl.) (Docket Nos. 24, 25).  In his declaration, Officer Marcus summarizes his

11  training and experience, which includes a Bachelor's Degree of Science in Criminal Justice and

12  several sessions from the Federal Law Enforcement Training Center and one from the Drug

13  Enforcement Administration.  Marcus Decl. ¶ 3.  He then characterizes defendant at the time of

14  the incident as "confused and/or disoriented," with "glazed-over eyes and marked reddening of

15  the conjunctiva," which he says are "objective signs of marijuana use."  Id. ¶¶ 6-7.  He also avers

16  that "based on my training and experience, incense is commonly used to mask the smell of

17  marijuana."  Id. ¶ 9.  In its motion, the government takes issue with the conclusions the court

18  drew from its review of the DVD.  Mot. for Reconsideration at 9.

19    At the hearing on its motion, the government argued it is important to reopen the

20  hearing because the court made determinations about Officer Marcus's credibility based on the

21  DVD of the encounter.  It also argued it is proper to reopen the hearing in the interest of justice

22  because there is evidence showing the seizure was lawful; specifically, Officer Marcus should be

23  given the opportunity to explain why he believed defendant's wife was nervous and describe

24  what he was doing as he sat in the car.

25  /////

26  /////

Defense counsel urged that the court's original suppression order is law of the case and that finality favors denying the motion.  She also argued that Officer Marcus's proffered testimony would not change the outcome of the hearing.

II.  Analysis

In the Ninth Circuit,

> [R]econsideration of a suppression order is permissible even at trial "if the record reveals matters which indicate that the evidence was lawfully obtained.  We rejected the view espoused in *McRae v. United States*, 420 F.2d 1283, 1288 (D.D.Cir. 1969), that the government should be barred from showing that evidence ought to be admitted at trial even if it did not do so during a previous suppression hearing, if, in the court's sound discretion, justice will be served.

United States v. Buffington, 815 F.2d 1292, 1298 (9th Cir. 1987) (most citations omitted).  The law of the case doctrine does not bar this court from reconsidering its prior order, for that doctrine "is 'wholly inapposite' to circumstances where a district court seeks to reconsider an order over which it has not been divested of jurisdiction."  United States v. Smith, 389 F.3d 944, 948 (9th Cir. 2004); but see United States v. Alexander, 106 F.3d 874, 877 (9th Cir. 1997) ("law of the case doctrine ordinarily precludes reconsideration of a previously decided issue"); see also Mark H. v. Lemahieu, 513 F.3d 922, 932 n.8 (9th Cir. 2008) (noting but not resolving the tension between the lines of authority).  The court has not entered judgment and so retains jurisdiction over the case.  Even if the doctrine applies, however, its application is discretionary.  Smith, 389 F.3d at 948; Alexander, 106 F.3d at 874 (court may depart from the doctrine if first decision is clearly erroneous or a manifest injustice would result, among other things).

The government relies on United States v. Ozuna, 561 F.3d 728 (7th Cir. 2009), cert. denied, __ S.Ct. __, 2010 WL 680522 (Mar. 1, 2010), to argue that reopening a suppression hearing is proper when the government proffers evidence bearing on the credibility of the witnesses at the hearing.  At the suppression hearing under consideration in Ozuna, the defendant testified he did not consent to the search of his vehicle and had not signed the consent form,

1  while the agent testified defendant had signed the form.  Id. at 731.  The court granted the motion

2  to suppress.

3            After the hearing, in Ozuna, the government submitted the consent form for

4  fingerprint and handwriting analysis and, when the latter showed the defendant had signed the

5  form, the government filed a motion to reopen the suppression hearing.  After appointing a

6  handwriting expert for the defendant, the district court vacated its prior ruling, determined that

7  defendant had signed the consent form, and denied the motion to suppress.  Id.  The Seventh

8  Circuit upheld the determination, finding that the district court had not abused its discretion:

9            In this case, the handwriting comparison testimony had a direct
             bearing on Ozuna's credibility. If this testimony showed that he
10           had, in fact, signed the consent form, it would mean that he had
             perjured himself at the previous hearing. This information would
11           assist the district court in determining whose version of the search
             to believe, resulting in a more accurate ruling on the motion to
12           suppress.

13  Id. at 735-36.

14           In this case, in contrast, the government's proffered evidence does not undercut

15  any credibility determinations this court has made.  Although the court relied on its own

16  observations in declining to accept Officer Marcus's characterizations of defendant's behavior

17  and that of his wife, it did not find that Officer Marcus had misrepresented anything he had seen.

18  If considered, Officer Marcus's declaration, which summarizes his training and his experience,

19  would not at this point change the court's conclusions about the behavior of defendant and his

20  wife, regarding which it takes no specialized training to reach a reasonable interpretation.

21  Contrary to the government's suggestion, the court is not bound by Officer Marcus's

22  characterization of the couple's actions, which can be observed on the video.  Cf. United States

23  v. Alexander, 106 F.3d at 877 (court properly relied on audio tape of 911 call in determining

24  defendant was delusional; finding plausible in light of evidence reviewed without holding an

25  evidentiary hearing).  See also Scott v. Harris, 550 U.S. 372, 378 (2007) (where parties' versions

26

1    of facts differ, court called upon to determine facts, including based on videotape evidence;

2    review of summary judgment determination).

3                Nor does the government's proffer now suggest there would be a miscarriage of

4    justice should the court decline to reopen the hearing.  The court does not doubt that Officer

5    Marcus has learned from training and experience that red, watery eyes and the use of incense

6    may, as a general matter, be indicators of marijuana usage.  Cf. United States v. Jones, 356 F.3d

7    529, 531 (4th Cir. 2004) (in reviewing facts involving warrantless entry into hotel rooms,

8    observing that incense is "commonly used" to mask marijuana); United States v. Dorsey, 418

9    F.3d 1038, 1041 (9th Cir. 2005) (bloodshot, watery eyes suggested marijuana use).  The court

10   also recognizes that in assessing reasonable suspicion and probable cause it must consider an

11   officer's experience and specialized training and the evaluation of inferences based on that

12   training.  United States v. Arvizu, 534 U.S. 266, 276-77 (2002).  If the court accepts Officer

13   Marcus's characterization of defendant's eyes as glazed and red, and the fact that incense was

14   burning, the suppression question becomes closer.  But the court is not persuaded that the kind of

15   miscarriage of justice warranting a new hearing has occurred, in part because Officer Marcus's

16   observations by themselves do not give rise to reasonable suspicion that defendant had marijuana

17   on his person.  Compare United States v. Washington, 649 F.Supp.2d 959 (D. Alaska 2009)

18   (probable cause to arrest for DUI based on moving traffic violation, strong odor of marijuana in

19   vehicle and on defendant's breath, and driver's bloodshot, watery eyes and incoherent speech).

20               Moreover, if Officer Marcus testified that during the time he sat in his vehicle, he

21   was not only watching to see if "they do anything funny," he also was filling out the incident

22   report, the court would credit that testimony, for the computer noises audible on the DVD appear

23   to support this statement.  Nevertheless, this testimony also does not persuade the court that a

24   miscarriage of justice would occur if the government's motion is denied.  So long as Officer

25   Marcus was undertaking some action connected with defendant's presence on an undesignated

26   road, the detention was proper.  United States v. Davis, 430 F.3d 345, 353 (6th Cir. 2005).  When

Officer Marcus got out of his vehicle again, however, he was no longer preparing the incident report.  Yet he retained defendant's driver's license, which continued the detention without reasonable suspicion to believe at that point defendant possessed marijuana.  United States v. Chan-Jimenez, 125 F.3d 1324, 1326 (9th Cir. 1997).

        Having carefully considered the government's motion and reviewed the record on defendant's motion to suppress, the court declines to exercise its discretion to reconsider its order of suppression.

        IT IS THEREFORE ORDERED that:

        1.  Plaintiff's motion for reconsideration (Docket No. 24) is denied; and

        2.  The case is set for status on May 20, 2010 at 10:00 a.m.

DATED:  May 11, 2010.

_____
U.S. MAGISTRATE JUDGE

mccluer.ord